**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

                        )

**BARBARA DAVIS,**             )
                        )
      **Plaintiff,**          )
                        )
         **v.**             )     **CIVIL NO. 3:10CV701**
                        )
**MICHAEL J. ASTRUE,**     )
**Commissioner of Social Security,**    )
                        )
      **Defendant.**         )
_____)

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

      This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Barbara Davis, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") payments.  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

      For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be

AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on January 18, 2005, claiming disability due

to myoclonic jerks,[2] vision problems, high cholesterol, acid reflux, and high blood pressure, with

an alleged onset date of November 10, 2004.  (R. at 58-60, 105-06.)  The Social Security

Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3]  (R. at 31-35;

38-40.)  On July 26, 2009, accompanied by counsel, Plaintiff testified before an ALJ.  (R. at 419-

37.)  On August 3, 2006, the ALJ denied Plaintiff's application.  (R. at 13-24.)  The Appeals

Council subsequently denied Plaintiff's request for review.  (R. at 6-8.)  Plaintiff then sought

judicial review in this Court, and pursuant to agreement of the parties, the matter was thereupon

remanded to the Commissioner for further review.  (R. at 533-35.)

Upon remand, a new hearing was held on February 19, 2009, at which juncture Plaintiff,

represented by counsel, appeared and testified.  (R. at 586-640.)  On May 21, 2009, the ALJ

denied Plaintiff's claim, finding that she was not disabled under the Act where, based on her age,

education, work experience, and residual functional capacity, there are jobs she could perform

which exist in significant numbers in the national economy.  (R. at 457-69.)  The Appeals

---

[2] Myoclonic jerks refers to "shocklike contractions of a portion of a muscle, an entire muscle, or a group of muscles, restricted to one area of the body or appearing synchronously or asynchronously in several areas.  It may be part of a disease process (e.g., epileptic or post-anoxic myoclonus) or be a normal physiological response (e.g., nocturnal myoclonus)."  Dorland's Illustrated Medical Dictionary 1241 (31st ed. 2007).

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 438-40.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the

3

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[4]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

_____

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. ¢ 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. ¢ 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has

an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d),

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to her past relevant work[5] based on an assessment of the claimant's residual functional

capacity (RFC)[6] and the "physical and mental demands of work [the claimant] has done in the

past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will

not be awarded.  Id.  However, if the claimant cannot perform his past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called to

testify, the ALJ's function is to pose hypothetical questions that accurately represent the

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  Id.  (footnote omitted).

claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA during the period from her alleged onset date through April 16, 2007, when she returned to full-time employment.  (R. at 462.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of myoclonic jerks, a conversion disorder,[7] dysthymia,[8] and generalized anxiety disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 463-65.)  The ALJ next determined that Plaintiff had the RFC to perform light work, except that she was limited to jobs entailing gross manual motor dexterity (and not requiring fine manual dexterity), and to tasks not

---

[7] A conversion disorder is "a mental disorder characterized by conversion symptoms (loss of alteration or voluntary motor or sensory functioning suggesting physical illness, such as seizures, paralysis, dyskinesia, anesthesia, blindness, or aphonia) having no demonstrable physiological basis and whose psychological basis is suggested by (1) exacerbation of symptoms at times of psychological stress, (2) relief from tension or inner conflicts (primary gain) provided by the symptoms, or (3) secondary gains (support, attention, avoidance of unpleasant responsibilities) provided by the symptoms."  Dorland's Illustrated Medical Dictionary 556 (31st ed. 2007).

[8] Dysthymia, or "dysthymic disorder," is a "mood disorder characterized by depressed feeling (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self-esteem, poor concentration or decision-making skills, and feelings of hopelessness."  Dorland's Illustrated Medical Dictionary 556, 590 (31st ed. 2007).

requiring exposure to heights, steps, moving machinery, or use of foot pedals.  (R. at 465-68.)
The ALJ also limited Plaintiff to occupations involving simple, routine tasks and minimal
interaction with others.  (R. at 465-68.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her
past relevant work as a registered nurse because of the level of exertion required in the position.
(R. at 15.)  At step five, after considering Plaintiff's age, education, work experience and RFC,
and after consulting a VE, the ALJ nevertheless found that there are other occupations which
exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 468-69.)
Specifically, the ALJ found that Plaintiff could work as a hotel housekeeper, parking lot cashier,
or laundry folder.  (R. at 469.)  Accordingly, the ALJ concluded that Plaintiff was not disabled
and was employable such that she was not entitled to benefits.  (R. at 469.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the
alternative,s he seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot.
for Summ. J.)  In support of her position, Plaintiff argues that: (1) the ALJ failed to sufficiently
credit Plaintiff's treating physicians' opinions; and (2) the ALJ failed to consider Plaintiff's age
at step five of the analysis.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 8-16.)
Defendant argues in opposition that the Commissioner's final decision is supported by
substantial evidence and application of the correct legal standard such that it should be affirmed.
(Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 8-16.)

### A. Substantial evidence supports the ALJ's hypotheticals posed to the VE, which encompassed the limitations noted by treating physicians that were afforded great weight.

Plaintiff argues that although the ALJ credited portions of her treating physicians'
opinions, the hypotheticals posed to the VE did not fully encompass such opinions.  (Pl.'s Mem.

at 20-21.)  The Court notes that Plaintiff's first argument does not appear to actually challenge the weight assigned to her treating physicians' opinions.  Rather, Plaintiff argues that the ALJ's conclusion that Plaintiff is not disabled, such that she is employable is not supported by the VE's testimony.  Plaintiff contends that the opinions of her treating physicians, Drs. Chang and McCune, which were assigned great weight by the ALJ, demonstrate that Plaintiff is incapable of performing substantial gainful activity.

As noted, Plaintiff does not challenge the weight assigned to the opinions of her treating physicians.  While Plaintiff cites case law and regulations which explain when a treating physician's opinion should be assigned controlling weight, she proceeds to offer no argument or take any issue with the ALJ's weighing of the opinion evidence involved.  Indeed, Plaintiff merely contends that the VE's testimony, which was "based on '…the remainder of Dr. Chang's and Dr. McCune's opinion'…should control the outcome of this case," and that the given limitations "would preclude all substantial gainful activity."  (Pl.'s Mem. at 20.)  Because Plaintiff did not raise the argument that the ALJ improperly weighed the opinion evidence, the Court cannot address the issue.

Instead, what is at issue is whether or not the portion of the treating physicians' opinions (which were assigned great weight) is consistent with the finding that Plaintiff is capable of performing substantial gainful activity.  The ALJ assigned great weight to Drs. Chang and McCune's opinions that Plaintiff had only mild restriction in activities of daily living and moderate restriction in maintaining concentration, persistence, or pace.  (R. at 412, 467.)  The ALJ found that the physicians' opinions that Plaintiff had moderate restriction in maintaining social relationships, and one or two episodes of decompensation, were not supported by the record, a finding that Plaintiff does not appear to challenge.  (R. at 412, 467-68.)  The ALJ also

noted that the physicians did not believe that a routine, repetitive, simple, entry-level job would exacerbate Plaintiff's psychological symptoms.  (R. at 413-14, 467.)

While the ALJ noted that such opinions were entitled to great weight because they were "generally consistent with the medical evidence of record," it is important to note that the opinions were not assigned controlling weight.  (R. at 468.)  "Generally consistent" does not necessarily mean that the ALJ was then required to adopt every opinion offered by the physicians.  Also, it seems that the VE's testimony was, in fact, consistent with the treating physicians' opinions.

Plaintiff's treating physicians generally opined that Plaintiff had, at the most, moderate restriction in her understanding and memory, social interaction, and ability to adapt.  (R. at 413-14.)  Plaintiff's physicians opined that her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rests was only moderately severe.  (R. at 413.)  The physicians also opined that Plaintiff's ability to respond appropriately to unexpected changes in the work setting was moderately severe.  (R. at 414.)  However, Plaintiff's physicians also opined that Plaintiff was not considered to be the type of person where a routine, repetitive, simple, entry-level job would actually serve as a stressor which would exacerbate her psychological symptoms.  (R. at 414.)

At the hearing, the ALJ posed the following hypothetical to the VE, who was present for the duration of the hearing:

> Individual approaching advanced age, high school education, work history as described, got the testimony, a limited range of light. Because of the myoclonic movements there would be no heights, steps or moving machinery in these occupations.  Because of reduction, I want to keep these low stress level.  They could be

> unskilled entry level positions with minimal interaction with people. People cause stress.

(R. at 629.)  After clarifying Plaintiff's exertional limitations (which are not at issue in this appeal), the VE testified that Plaintiff could perform the light occupations of hotel housekeeper, parking lot cashier, and laundry folder.  (R. at 630-32.)  The ALJ then specifically discussed the treating physicians' opinions with the VE.  The VE confirmed that he had reviewed the opinions.  (R. at 632.)  The ALJ specifically addressed the two categories that the physicians had marked "moderately severe," and inquired whether the opinions impacted the identified occupations of hotel housekeeper, parking lot cashier, or laundry folder.  (R. at 632-33.)  The VE testified that "it was all very subjective," and that he would "tend to think that she couldn't do the jobs . . . particularly because of the reference to decompensation."  (R. at 634.)  However, as noted, the ALJ found that there was no evidence supporting the physicians' opinions regarding episodes of decompensation.  (R. at 467-68.)  The VE also testified that the moderately severe issues nevertheless gave him "pause."  (R. at 634.)

The ALJ also discussed the medical evidence, particularly the records of Drs. Change and McCune.  In January 2006, Dr. Chang noted that Plaintiff was experiencing substantial stressors due to being out of work, financial stressors, and conflicts with her mother.  (R. at 466.)  Dr. Chang also noted that Plaintiff took the medication Lexapro, which had a positive effect on her mood.  (R. at 466.)  The ALJ noted that the records of Drs. Chang and McCune reflected that Plaintiff was treated conservatively, with no evidence of the need for hospitalization or emergency treatment.  (R. at 467.)  The physicians noted that increased stress from financial insecurity, exhaustion, and family problems only exacerbated her condition and resulting symptoms to a certain extent.  (R. at 467.)  Indeed, on December 4, 2006, treatment notes indicate that Plaintiff was encouraged to return to work.  (R. at 577.)  Furthermore, on March 14,

10

2007, relevant medical notes indicate that Dr. Chang "would support her return to work as this would help her with her most pressing stressor in life which is financial." (R. at 583.) Further, despite the added stressors in her life, Plaintiff maintained her conservative treatment plan of therapy and medication until she returned to work in April 2007. (R. at 397, 404-05, 467-68, 566, 571, 578.) The ALJ also noted that despite Plaintiff's impairments, she was able to take care of personal needs, cook, clean, shop, watch television, attend church, socialize with her mother and friend, communication via email and telephone, and maintain a part-time sewing business. (R. at 467.)

Although it is a "close case," it cannot be said that substantial evidence does not support the ALJ's decision in regard to the issue. The ALJ assigned Drs. Change and McCune opinions great weight, but not controlling weight. It is clear that the ALJ took into consideration the two "moderately severe" categories checked by the physicians, as he specifically discussed them with the VE. However, the ALJ explicitly noted that the physicians did not believe that a routine, repetitive, simple, entry-level job would unduly exacerbate Plaintiff's psychological symptoms, as is supported by the record. The ALJ otherwise addressed the medical evidence surrounding Plaintiff's nonexertional impairment, which does not support a conclusion that Plaintiff is so severely limited that she could not perform any substantial gainful activity. Accordingly, the Court recommends a finding that the ALJ's decision in this regard is supported by substantial evidence and should be affirmed.

### B.     The ALJ properly considered Plaintiff's age at step five of the analysis.

Plaintiff's second argument that the ALJ did not adequately take into consideration Plaintiff's age at step five of the evaluation is misplaced. Specifically, Plaintiff contends:

> Given that, because of her age, [Plaintiff] would have been found 'disabled' even
> if she was able to perform 200 different unskilled occupations (at the sedentary

11

level), it is illogical to conclude that she is 'not disabled' where the [VE] could only identify the presence of three occupations she may be able to perform – regardless of physical capability.

(Pl.'s Mem. at 25.)

The flaw in Plaintiff's argument is that she was *not*, in fact, limited to sedentary work. There are Grids for those limited to sedentary work, and those limited to "light work."  Plaintiff was limited to light work – a finding that she does not challenge.  Although Plaintiff urges the Court that "it is important to observe that, because of [Plaintiff's] age, she would have prevailed if the ALJ had found she was limited to Sedentary forms of work," and that "it is even more significant that the Sedentary Grid represents the presence of more than 200 sorts of unskilled occupations which can be performed at the Sedentary level," the Court fails to see the relevance of such an argument.  (Pl.'s Mem. at 24.)  It should be clear that the sedentary Grid in this case is entirely irrelevant, as the ALJ found that Plaintiff could perform light work.  Furthermore, the ALJ did not rely on *any* Grid to determine that Plaintiff was not disabled, as she has nonexertional impairments that cannot be measured by the Grids.  Accordingly, Plaintiff's attempts to rely on the Grids to prove that she is disabled are unpersuasive.

Plaintiff also seems to contend that the three occupations identified by the VE that she could perform does not constitute a "significant" number of jobs.  Plaintiff offers no support for this assertion, other than the repeated emphasis that the VE "was only able to identify *three* occupations" which Plaintiff could perform.  (Pl.'s Mem. at 24-25, emphasis in original.)  Such an argument must fail where the Fourth Circuit has indicated that 110 positions within the regional economy does not constitute an insignificant number.  Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).  Furthermore, Hicks has been cited in numerous published and unpublished opinions in supporting the premise that 110 represents a reasonable baseline in

12

determining what constitutes a significant number of available jobs.[9] Here, the VE, in fact, identified 13,230 positions that Plaintiff could perform within the regional economy, which is a significantly larger amount than the 110 identified in Hicks.  (R. at 630-32.)  Consequently, it cannot be said that the Commissioner has not fulfilled his burden to show that other work exists in significant numbers which Plaintiff can perform.  Accordingly, Plaintiff's argument is rejected and the Court recommends that the ALJ's decision be affirmed.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Rober E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

---

[9] See Koonce v. Appel, 1999 U.S. App. LEXIS 307 (4th Cir. Jan. 11, 1999); Hyatt v. Apfel, 1998 U.S. App. LEXIS 18193 (4th Cir. Aug. 6, 1998) (650 jobs); Robinson v. Chater, 1997 U.S. DIST. LEXIS 6188 (D.N.C.  April 7, 1997); Prunty v. Barnhart, 2005 U.S. Dist. LEXIS 16594 (D. Va. Aug. 9, 2005); Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (finding that 1,350 jobs was a significant number of jobs); Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (holding that 1,400 jobs was significant); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (holding that 1,266 jobs was significant); Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) (holding that 850-1000 jobs was significant).

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

_____ /s/ _____
Dennis W. Dohnal
United States Magistrate Judge

Date: <u>October 11, 2011</u>
Richmond, Virginia